IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
vs.                                )   Case No. 3:15-cr-93
                                   )
JARRATT TURNER,                    )
                                   )
            Defendant.             )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BEFORE THE HONORABLE MARVIN E. ASPEN, DISTRICT JUDGE

TRANSCRIPT

OF

PROCEEDINGS

April 16, 2018

Sentencing Hearing

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
APPEARANCES:

        For the Government: Ms. Carrie Daughtrey
                            Asst. U.S. Attorney
                            110 Ninth Avenue S., Suite A961
                            Nashville, TN 37203

        For the Defendant:  Mr. Dumaka Shabazz
                            Asst. Federal Public Defender
                            810 Broadway, Suite 200
                            Nashville, TN 37203


PREPARED BY:
                    CATHY B. LEIGH, RDR, CRR
                        Court Reporter
                        126 Babb Drive
                       Joelton, TN 37080
                       (615) 512-7544

1          The above-styled cause came on to be heard on April

2     16, 2018, before the Honorable Marvin E. Aspen, District

3     Judge, when the following proceedings were had, to-wit:

4          THE COURT:  Good morning.  Would you state your

5     names for the record, please.

6          MS. DAUGHTREY:  Carrie Daughtrey for the United

7     States, Your Honor.

8          MR. SHABAZZ:  Your Honor, Damaka Shabazz for Mr.

9     Turner.

10         THE COURT:  Okay.  We're here for sentencing of

11    Mr. Turner.  He is charged in a 16-count indictment, 16

12    counts of something kind of like 16 counts of production of

13    child pornography and one count of transportation of child

14    pornography.  There is no plea agreement in the case.

15         The Probation Department has recommended a total

16    sentence of 120 years.  The government recommends a similar

17    sentence; same sentence, I should say.  The defendant

18    requests a sentence of 30 years.

19         I have read all of the presentence materials,

20    including a letter that I received on behalf of the defendant

21    from Mr. Pitts.  Is this a correct recitation of the current

22    status of the case?

23         MR. SHABAZZ:  It is, Your Honor.  And we have two

24    other letters that I would read to the Court today before my

25    client makes allocution.

```
 1              THE COURT:  You have the letters you want me to
 2   read them?
 3              MR. SHABAZZ:  Sure.  I can read them or pass them
 4   up.
 5              THE COURT:  Oh, no, you can read them if you like.
 6              All right.  Do you have any other evidence other
 7   than the letters you want to present?
 8              MR. SHABAZZ:  No, Your Honor.
 9              THE COURT:  And you have no objections to the
10   guideline calculations?
11              MR. SHABAZZ:  That is correct, Your Honor.
12              THE COURT:  Okay.  Why don't you go ahead and read
13   your letters if you would.
14              MR. SHABAZZ:  Would you like me to go to the
15   podium?
16              THE COURT:  Wherever you are most comfortable.
17   Makes no difference.
18              MR. SHABAZZ:  I can barely hear, so I will go up
19   there.
20              THE COURT:  Sure.
21              MR. SHABAZZ:  Your Honor, this first letter is
22   from Ms. Maria Andrews.  That's Jarratt Turner's mother.
23   This was -- I have spoken to her several times.  This is very
24   difficult for her.  She is very emotional about this and why
25   she could not be here today.
```

1    Your Honor, I have written this letter time and
2  time again only to rewrite and throw away.  It seems that
3  there is really not much I can say or do to make the horrible
4  and tragic situation better.  I apologize to all those
5  involved in this situation for what happened.  I wish I could
6  somehow make it different, but that is not possible.
7    I can tell you that no matter the circumstances, I
8  love my son, Jarratt, and will always love him.  The Jarratt
9  I knew was always a person of great intellect and integrity.
10 He loved fishing, skiing and traveling with us and his
11 grandparents.  He was a very easy baby and sensitive
12 adolescent.
13    He had many turbulent times as a teenager and
14 young adult, but he did manage to turn it around.  Throughout
15 those difficult and problematic times, he was still sensitive
16 and caring to those he loved and knew.
17    Your Honor and those who are part of this concern,
18 I can again only tell you that I am deeply sorry and take a
19 bit of blame on myself.  I have asked myself so many times if
20 only.  There is no way for me to make you heal.  I wish I
21 could.  But with a heavy heart, I want you to know that I
22 love Jarratt and I believe he is deep in his heart sorry for
23 his transgressions and very remorseful.  Thank you and love
24 to Jarratt, Maria Andrews.
25    Your Honor, the next letter is from his uncle,

1 Dana Andrews.

2      Dear Senior Judge Aspen:  In many ways these are
3 the most difficult words I have ever written.  I write to
4 support my nephew, Jarratt, and hopefully this letter gets to
5 you in timely manner.

6      I am fairly certain that you, Senior Judge Aspen,
7 know how devastating a case like this can be.  As part of
8 Jarratt's family, I can assure you that we all are bewildered
9 and saddened and angered by his actions and crimes.

10      We have likened the facts of this case to other
11 dissimilar cases one often reads about in the news, that of
12 an angry, isolated gunman who wreaks havoc at school on
13 unsuspecting victims.  While watching the news and seeing
14 details emerge, like many others I have tried to understand
15 what the families of the victims probably go through.  I
16 empathize and imagine their grief and shutter to think about
17 being in their shoes.

18      I have also thought about the perpetrators of such
19 crimes, and I have tried to imagine what his family must be
20 going through, what his mother or father or extended family
21 must be feeling asking themselves such questions where did I
22 go wrong, what did I miss, and making statements to
23 themselves such as no, no, not my son.  No way.  Not the boy
24 I have known my whole life.

25      Alas, Jarratt is my nephew and one who has been

convicted of crimes that are so difficult to imagine that I
don't want to imagine.  Yet, any denials about his case are
wasted thoughts.

However, he is my sister's only child as a boy who
has always been sweet, kind and genuine, humorous, talented
and spiritual.  I believe that his positive character traits
are still with him.  Those parts of his soul are the ones
that stand out and have remained with him into adulthood:
His love for his family, his love for his mother and his
sharp, fine mind, his ability to learn and practice what he
has learned, his talent in music and art and his
understanding for other people who may be going through
exceedingly trying times in their lives and his ability to
help them through those times.  He has demonstrated the
latter quite often.

I have exchanged a few letters with Jarratt.  In
those letters, I see his devastation regarding his
conviction.  I see his soul searching.  He understands the
seriousness of his conviction and his guilty plea.  I know
that he has crushed others, specifically his victims, their
families, and not least of all, his family.  His recognition
for this devastation is clear to me.

Nonetheless, as I have stated, I believe that he
has taken stock, and I am certain that he knows that the rest
of his life must travel 180 degrees from the rabbit hole he

1  went down over the last number of years.

2          Besides Jarratt's intellect and compassion I have

3  seen him demonstrate for others, I know his work ethic.  Once

4  he has a positive focus, once he sees the good that can do,

5  once he sees that hard work is a good thing and all these

6  things he sees very clearly, there is no stopping him.

7  Specifically, I believe that he can turn his life around.  I

8  know that he will not only help himself through programs like

9  Sex and Love Addicts Anonymous, but others.  He will make

10  sure that he reaches out to numerous others who find

11  themselves in this position.  He has the ability to not only

12  help others who have been convicted of crimes like this and

13  do everything in his power to help get them onto a straight

14  path of being kind and compassionate toward others instead of

15  hurting.  But because of his help and focus, multiple lives

16  down the road will be affected in a positive way.  I believe

17  this.

18          I may not have the right to ask Your Honor, but I

19  hope somewhere within you it is possible that to see in

20  Jarratt's case there is a real possibility that putting him

21  in the right position and the right place for the reasonable

22  amount of time regarding his coming incarceration will allow

23  him to turn his life around, to rid himself at the very least

24  and quiet himself of whatever negativity that has brought him

25  to this point.  I believe it is probable.  All I humbly ask

1   is that somewhere you harbor a thought of it being possible.

2          Thank you for taking the time to read my thoughts

3   and words, Your Honor, and thank you for considering all that

4   I have put forth.  No matter what your decision and decree

5   may be, I will respect it, and I believe our family will do

6   so also.  Sincerely, Dana R. Andrews.

7          Your Honor, I will just put these up as Defense

8   Exhibit Collective 1.

9          THE COURT:  We will enter those letters of record.

10         Does the government have any evidence it wishes to

11  present?

12         MS. DAUGHTREY:  Your Honor, the government does

13  not have any evidence.  I do also have a letter from ██████

14  ██████, who is the mother of one of the victims.  She is

15  here in court, along with another family member of the male

16  child in this case.  She has asked also that I read a letter

17  on her behalf.

18         (Portion under seal in separate volume.)

19         MS. DAUGHTREY:  And, Your Honor, given the fact

20  that her name and her son's name are in the record, I would

21  ask that this portion of the sentencing hearing be placed

22  under seal.

23         THE COURT:  All right.

24         MS. DAUGHTREY:  So the identity won't be released.

25         THE COURT:  That motion will be allowed.

1          MS. DAUGHTREY:  Thank you.

2          THE COURT:  Do you want to go first or the

3    government?

4          MR. SHABAZZ:  Either way, Your Honor.  At the

5    appropriate time, Mr. Turner would like to make a statement.

6          THE COURT:  Unless you wish otherwise, I will let

7    him have the last word.

8          MR. SHABAZZ:  Sure.

9          THE COURT:  The government may proceed.

10         MS. DAUGHTREY:  Your Honor, knowing that you have

11   read through all the sentencing materials, I am not going to

12   rehash my sentencing memorandum, which was very long.  But I

13   do want to just make a few statements.  This is one of the

14   most heinous crimes that I have ever seen involving children

15   in the Middle District of Tennessee.  This defendant was a

16   leader in a close-knit group of people who were working to

17   conquer their addictions.  He took advantage of them.  He

18   groomed them to the point where they were willing to let him

19   babysit their children.  They trusted him, and they didn't

20   have a whole lot of disposable income to go out and hire

21   somebody, so it was a relief to them to have somebody who was

22   willing to help them out to let them go out on a date night.

23   And he took advantage of these vulnerable children.

24         And then when he did babysit them over a course of

25   many, many months, he perpetrated each parent's worst

1   nightmare.  He sexually molested these very young children,

2   including penetrated them, and recorded that molestation.

3   The children both were nonverbal.  One was a toddler, one was

4   an infant so they couldn't go to anybody or tell him to stop

5   or go to anybody else and say, I am not comfortable with

6   this.  Please help me.

7           And then Mr. Turner shared these images and videos

8   online, some of which had been seen by the National Center

9   for Missing Exploited Children in another unrelated case.

10  These images and videos are out on the Internet.  They can

11  never be taken back.  And it is unclear how many other people

12  are going to have access to them and whether or not these

13  images are going to haunt these children throughout their

14  lifetimes.

15          We cannot begin to know what impact this kind of

16  trauma is going to have on these children, how their adult

17  lives are going to play out.  What we do know is that adverse

18  childhood experiences, or ACEs they are called, can have a

19  really devastating effect on people's lives.  I think

20  probably these kind of traumatic childhood experiences have

21  had a bad effect on Mr. Turner's life as well, but that does

22  not give him carte blanche to go forward and abuse children

23  like this.

24          This crime is doubtlessly going to perpetrate

25  itself throughout the lives of these victims and their

families some way or another.  And while the crime is not
murder, as the defendant so aptly points out in his
sentencing papers, it is possible that these experiences are
going to result in something that is akin to a living death
to these two children and their families.

Each of these victims and their families deserve
justice, Your Honor.  These families deserve to know that the
justice system is working for them and that this defendant
will never be able to perpetrate this kind of abuse against
another child again.

For these reasons, the United States is asking for
a sentence 120 years or whatever that will keep this man in
prison long enough that he never is able to do this to
another child again.  Thank you, Your Honor.

THE COURT:  Counsel.

MR. SHABAZZ:  Honorable Judge Aspen, Jarratt
Turner is here today asking for a sentence of 30 years.  We
have outlined in great detail many of the things that Mr.
Turner has gone through, he himself a victim of almost every
single ACE that the government has set forth.  What stands
out the most in his childhood trauma is being raped by his
father at a young age.  This cause put Mr. Turner on a path
to where he never fully understood who he was.  Never fully
understood his sexuality.  And it caused a lot of pain as he
grew up.

1      We also indicated in our briefing at least two
2  other occasions that Mr. Turner was raped.  We believe that
3  this has put a lifelong imprint on Mr. Turner that has
4  manifested itself in a horrible and negative way.
5      But we also understand with the bipolar
6  depression, the drug addiction, all of those things add up to
7  what we would consider a very traumatic childhood for Mr.
8  Turner.
9      In some ways, as we noted, you know, he grew up in
10 a home with two parents for the most part.  His needs were
11 taken care of.  But there was a dark side that has left a
12 horrible imprint on Mr. Turner that he is still dealing with.
13     When the Court considers public safety, a sentence
14 of 30 years would keep the public safety from anything that
15 Mr. Turner could do for the next three decades.  But in
16 addition to that, he would be allowed to have treatment while
17 he is in prison, both drug treatment, and, more importantly,
18 treatment that will go specifically towards his crimes.  We
19 have outlined in detail the nature of those.  We have
20 outlined in detail the different components of those, and Mr.
21 Turner, we believe, will benefit from those.
22     Similarly, when Mr. Turner is released, he will be
23 on a lifetime supervision.  He also would be under treatment
24 from a sponsor that the government has chosen.  Probation
25 would order that he go to a specific therapist, and, again,

1   that is chosen from the government.

2          Mr. Turner, during much of my representation, has

3   been in a very dark spot.  There was numerous meetings where

4   sometimes all we did was sit and Mr. Turner cry, and it took

5   us a long time to really get to the meat of the case.  And

6   that is the type of remorse that I have noticed from Mr.

7   Turner.

8          During our conversations, he never felt that he

9   was trying to groom the families.  He knew these families

10  before they even had kids.  They have gone through a lot of

11  ups and downs together.  But what hurts him most is the fact

12  that these were people that trusted him and people that he

13  had grown to love himself, and he has committed a horrible

14  crime against them and their children.  And that is something

15  that every day he tells me that he deals with and every day

16  is pained by.

17         So, Your Honor, we would ask for a sentence of 30

18  years.  We do not believe in this matter it is not a murder,

19  and to sentence him to die in prison would be to accept this

20  as a sentence of murder.  We have outlined his life

21  expectancy of a white male is 80 years.  However, as the

22  government pointed out, with ACEs you can subtract another 20

23  years.  And the BOP and federal government have acknowledged

24  that they basically look at the harsh impacts of prison as

25  taking another ten to 15 years off a person's life.

1      We believe around the early sixties would be a
2  life sentence for Jarratt.  We ask that a sentence of 30
3  years.  We believe that that would be appropriate in this
4  matter and will address the safety concerns, the recidivism,
5  as well as any type of respect for the law.  And we very
6  humbly ask this court for a sentence of 30 years.  And Mr.
7  Turner also would like to make an allocution.
8      THE DEFENDANT:  Thank you.
9      I would like to begin by taking opportunity to
10  apologize to the victims and their families.  I am so sorry
11  for everything my actions have put you through.  When I
12  entered your lives, it was never my intention for any of this
13  to happen.  I have spent many sleepless nights sick to my
14  stomach with disgust over the damage and pain I have caused.
15  I had one night in particular looking at my reflection in the
16  mirror, I collapsed into a ball crying.  I am sorry.  If I
17  could go back and undo everything that has happened, I would,
18  but I can't.  So all I can do is offer my sincerest
19  apologies.
20      Since my arrest, I have prayed every day that you
21  find peace, comfort, and healing, and I will continue to do
22  so.
23      Your Honor, for 33 years I led a good life
24  overall, despite the pain and trauma I endured as a result of
25  physical, mental, and sexual abuse.  I had my struggles with

1  addiction but had many wonderful friends and family members

2  who loved me through my struggles.  They saw the good in me

3  that shone through my darkest days.  This is why when I found

4  my way into recovery, I made a point to help those who were

5  still struggling any chance that I could.

6          Despite being in recovery for several years, I had

7  yet to address issues and addiction stemming from sexual

8  abuse.  This led me to my involvement with Internet

9  pornography in the summer of 2014.  During this time, I met a

10 man online and became involved in an unhealthy relationship

11 with him.  During one of our liaisons, he introduced me to

12 child pornography.  These images triggered memories from my

13 childhood sexual abuse that were filled with trauma, guilt,

14 and also some degree of pleasure.  For whatever reason, my

15 mind fixated on the latter, and I became obsessed with

16 finding more.

17         I found a website where many people were posting

18 images they claimed to be their children, and I noticed many

19 people were wanting to exchange child pornography within the

20 comments of said images.  Against my better judgment, I

21 opened an account with nonpornographic images of my victims.

22 I received offers of child pornography for nude images.  And

23 again, against my better judgment, I posted nude images of my

24 victims.  This opened Pandora's box, so to speak, and the

25 next thing I knew, I was meeting all kinds of people online

1  wanting to exchange chid pornography for sexually explicit
2  images and video of my victims.
3      When this began, I became addicted to child
4  pornography and found myself in the darkest hole I had ever
5  dug myself into.  Upon my arrest, my spiritual advisor in
6  recovery, known as a sponsor, informed me that he was going
7  to stay by my side as my sponsor no matter what.  He told me
8  that there was a 12-step program called Sex and Love Addicts
9  Anonymous where people with the same issues I had could find
10  recovery and live normal, productive lives.  He told me he
11  was a member who had sponsored men that committed the same
12  crimes as I had, and they were able to find recovery.
13      Since that time, I have received the Sex and Love
14  Addicts Anonymous literature and began working the 12 steps
15  with my sponsor.  I have shared this information and
16  literature with other people who have been arrested for
17  similar crimes and even began having 12-step meetings in our
18  cells when I was housed at Grayson County.
19      This leads me to my plans for release.  Your
20  Honor, after my release from prison, I plan to lead a life of
21  total transparency.  I plan to continue my recovery in Sex
22  and Love Addicts Anonymous as well as all programs provided
23  by the government and share my story with as many people as
24  possible.  If my story can prevent one person from making the
25  same mistakes I have made and prevent them from abusing a

1 child, I will have considered my life a success.

2 Since the mid 2000s, the Federal Bureau of Prisons
3 has opened 13 prisons that I know of designated to house sex
4 offenders.  This is obviously an issue that is not going away
5 but is rather growing.  I am asking you to allow me to be a
6 part of the solution by allowing me to be a free man some day
7 so I can share my story and message of recovery with others
8 like myself in an effort to prevent others from committing
9 these crimes in the first place.  I plan to do this in prison
10 as well as whatever time I have left in life as a free man.

11 Your Honor, I am asking that you have mercy with
12 me and keep my sentence to around 30 years.  At 30 years, the
13 Bureau of Prisons could house me in a medium security prison,
14 thus making me eligible to serve my time in Marianna,
15 Florida.  There are many victims of my crimes, including my
16 own family, especially my mother.  Being in Marianna would
17 ease my family's pain somewhat by placing me close enough to
18 visit on a regular basis, as they are located in Florida.  My
19 mother has not seen me in over three years, and one of my
20 greatest fears is that she will pass away while I am in
21 prison.

22 Thirty years will also leave me enough time left
23 on this Earth to carry out plans to share my story with as
24 many people as possible in an effort to prevent others from
25 harming children, harming families, and becoming involved

1  with child pornography.

2          The victims, their families, and yourself have my

3  promise that I will dedicate the rest of my life to this.

4  Thank you for allowing me to address this court.

5          MR. SHABAZZ:  Your Honor, he brought up, he

6  mentioned Marianna.  We would request either the FCI Marianna

7  or the one in Tucson, Arizona as a recommendation.

8          THE COURT:  All right.  That will be my

9  recommendation.

10          MR. SHABAZZ:  Thank you, Your Honor.

11          THE COURT:  Well, this is one of the cases that I

12  think every judge dreads to be the sentencing judge for.  I

13  have no doubt as you stand here before me the sincerity of

14  your words.  I am only sorry that your father began this

15  chain that you are passing on to others was not intercepted

16  at a time that would help you.

17          We have so many cases before the Court where you

18  can trace the defendant's plunge in the hole of criminality

19  and antisocial behavior to parental setting.  In that case,

20  in that sense, rather, your case is not unusual.  Doesn't

21  make it any less tragic, but not unique.

22          Giving you the benefit of the doubt with treatment

23  and assuming the sincerity of your words and even the ability

24  that you have to keep the demons away for the rest of your

25  life, I can't give you the sentence that your attorney asked

1   for because, unfortunately, there are other considerations
2   that are important.  If there is a ten percent chance that
3   you out on the streets can revert, act to the type of conduct
4   that put you in this situation in the first place, I can't
5   take that chance.  This is not a case where, you know, I
6   could take a chance on a shoplifter or some other petty
7   criminal, even a drug user, chronic drug user, and say gee
8   whiz, there is a ten percent chance, and I am going to let
9   that person out on the street because the consequences,
10  although bad, if he commits a crime again are not so bad that
11  we can't take a risk on that person.
12          So if I presume that there is a 90 percent chance
13  that you will never get in trouble again in a case like this
14  involving innocent children whose lives can be ruined just
15  the way your life was ruined by somebody else who did the
16  same thing to you, I can't take a chance on it because one of
17  the goals of sentencing is to protect society.  And I am not
18  talking about to deter other people from committing the same
19  crime.  That's called general deterrence.  Neither have been
20  talking about specific deterrence to defer you from
21  committing the crime.  I am talking simply about protecting
22  society.
23          The Probation Department's recommendation under
24  these circumstances is harsh but not unreasonable and is
25  appropriate.

1    I am going to sentence you on Counts One, Two,
2  Four, Seven, Eight, and Nine, to 15 years custody on each
3  count, concurrent with one another but consecutive to all
4  other counts.
5    On Counts Three, 10, 11, 12 and 13, 15 years per
6  count concurrent with one another but consecutive to all
7  other counts.
8    On Counts 15 and 17 concurrent with each other but
9  consecutive to all other counts, which if my math is
10 correct -- when I say months, I take that back; it is years
11 each time I have spoken of 15.
12    So if my math is correct, we are talking about a
13 total of 105 months (sic).  And I will ask the Probation
14 Department to make sure that my calculations are correct.
15 Years.  Let the record reflect whenever I have said months in
16 articulating the sentence, I have meant years.
17    So we have 105 years total.  Again, that is my
18 intent, and if there is if I have done the math incorrectly,
19 I will ask the Probation Department to verify that.  And I
20 will correct it before I enter judgment on the sentence.
21    There will be a special assessment of $1,700, no
22 fine or other costs.
23    There will be a lifetime of supervised release on
24 each count concurrent with each other.
25    I am going to recommend that you receive the type

1   of treatment that you need while incarcerated both in terms
2   of substance abuse as well as mental health.  I hope that you
3   do write your story.  I hope you publish it.  I hope it would
4   be a great catharsis for you, and it would be a chance for
5   you to make some atonement for what you have done.  But more
6   importantly, I think it will be a help to other people who
7   are dabbling with this problem and these urges.
8           I expect you will spend the rest of your life in
9   prison.  You are 36.  One hundred five years, even with time
10  out for good behavior, is going to put you in prison for the
11  rest of your life.  I said 105 because not in this case but I
12  have other cases where prosecution asked for artificial
13  sentences for shock purposes in a thought that that's going
14  to deter others.  I even had a case where somebody some
15  prosecutor asked for a thousand years.  That's nonsense.  One
16  hundred five years is going to keep you in prison for your
17  natural life.  And that is unfortunate, and I am not giving
18  you the sentence with any great pleasure on my part.  There
19  is no vindictiveness on my part either.  The parents want to
20  be vindictive, but vindictiveness is not coming from me.
21  What's coming to me is a concern for defenseless people out
22  there who are your potential victims.
23          There is restitution to be ordered in this case on
24  an agreed amount, and I will make that part of my order as
25  well.  And so I have the correct amount in front of me, what

1  is the amount?

2  　　　　MS. DAUGHTREY:  The amount was $15,552 for each

3  for the two victims so a total of about 31.

4  　　　　THE COURT:  We'll order that restitution.

5  　　　　I have to set the special conditions of supervised

6  release even though it is unlikely that that's going to be

7  relevant in this your case.

8  　　　　The conditions are that you fulfill restitution.

9  　　　　You make yourself available for substance abuse

10  and mental health treatment if the Probation Department so

11  requests, as well as sex offender counseling.

12  　　　　That you register as a sex offender immediately

13  after you are released from the penitentiary.

14  　　　　That you abstain from alcohol or narcotic drugs.

15  　　　　That you keep the Probation Department advised of

16  your residence and employment.

17  　　　　That your conduct be restricted from associating

18  with children under 18 years of age or work or frequent or

19  live in places where children and areas where children

20  congregate.

21  　　　　And that you not have any contact with the two

22  victims in this case or their families either in person,

23  telephone, mail or any other way.

24  　　　　That will be the sentence.  We'll enter judgment

25  on the sentence.

1      As the Sixth Circuit is required, I have to ask

2 both the prosecution and the defense if you have any

3 objections to this sentence, procedural objections, or if

4 there is anything that we have missed.

5      MR. SHABAZZ:  Your Honor, on behalf of Mr. Turner

6 we would object.  We don't believe that you have adequately

7 taken into the consideration his childhood trauma, acceptance

8 of responsibility, and the fact that a shorter, much shorter

9 sentence still would achieve the purposes of 3553.

10      THE COURT:  Yes.  You have stated that in your

11 very able advocacy for your client.  I have considered it.  I

12 think I have addressed it.

13      As far as the government is concerned?

14      MS. DAUGHTREY:  Your Honor, I wasn't entirely

15 clear, but I think I heard you say the deterrence was part of

16 the reasoning for the sentence as well as I know you touched

17 on other factors.

18      THE COURT:  Deterrence in the sense of protecting

19 society.

20      MS. DAUGHTREY:  Yes, the public.

21      THE COURT:  From recidivist.

22      MS. DAUGHTREY:  The other thing I'd like to bring

23 to the Court's attention is that there is an outstanding

24 forfeiture.  I don't believe the defendant objects, but does

25 need to be ruled on both orally and placed in the judgment.

1          THE COURT:  Yes, that will be in the judgment on

2    the sentence.  Thank you.

3               (Court was adjourned.)

4          THE CLERK:  This is the case of *USA v. Jarratt*

5    *Turner*, Case No. 3:15-00093.

6               Is the government present and ready?

7          MS. DAUGHTREY:  Yes.

8          THE CLERK:  Is the defendant present and ready?

9          THE DEFENDANT:  Yes.

10         THE COURT:  I am sorry to call you back.  It is 95

11   percent mea culpa, five percent mea culpa shared by the two

12   attorneys and the Probation Department.  I neglected to

13   advise the defendant of his rights to appeal.

14              Mr. Turner, you have the right to appeal from the

15   sentence that I have imposed.  If you cannot afford the cost

16   of appeal, we will provide pay for those costs and provide an

17   attorney for you free of charge.

18              I also want to advise you that the government

19   would have a right to file a cross appeal.

20              Anything else?

21         MS. DAUGHTREY:  Your Honor, if I may just clarify

22   the sentence.  My understanding is that you adopted the

23   recommendation by the Probation Office except for with regard

24   to Count 17, which you want running concurrent to everything

25   else?

1          THE COURT:  Correct.  For a total of 105 years.

2          MS. DAUGHTREY:  Yes.  Thank you.

3          THE COURT:  Thank you very much.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I, Cathy B. Leigh, Court Reporter with offices at

 4   Joelton, Tennessee, do hereby certify:

 5          That I reported on the Stenograph machine the

 6   proceedings held in open court on April 16, 2018, in the

 7   matter of UNITED STATES OF AMERICA vs. JARRATT TURNER, Case

 8   No. 3:15-cr-93; that said proceedings in connection with the

 9   hearing were reduced to typewritten form by me; and that the

10   foregoing transcript (pages 1 through 25) is a true and

11   accurate record of said proceedings.

12          This the 4th day of June, 2018.

13

14                              /s/ Cathy B. Leigh
                                Cathy B. Leigh, RDR, CRR
15                              Court Reporter

16

17

18

19

20

21

22

23

24

25
```